IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARVIN BROWN,

       Petitioner,

v.                                                                    CIV No. 06-1109 RB/LFG

ROBERT ULIBARRI, Warden,

       Respondent.

**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION**[1]

**Findings**

1.       This is a proceeding on a petition for writ of habeas corpus brought under 28 U.S.C. § 2254,[2] filed November 13, 2006. [Doc. 1]. Respondent filed an Answer [Doc. 13] on February12, 2007, with exhibits. In its Answer, Respondent asks the Court to dismiss the petition with prejudice, or alternatively to dismiss the petition, without prejudice, to allow Petitioner Marvin Brown

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] The Court construes Brown's § 2254 petition as one brought under 28 U.S.C. § 2241 because the petition challenges only the execution of Brown's sentence, rather than the fact of his conviction. *See* Hamm v. Saffle, 300 F.3d 1213, 1216 (10th Cir. 2002) (construing a § 2254 petition as one falling under § 2241 because it challenged the execution of the sentence). *See also* Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000) (attack on the execution of a sentence as it affects the duration of confinement fits better under § 2241).

("Brown") to exhaust his state court remedies for any unexhausted claims. No further pleadings were filed, and this matter is ready for resolution.

2.      Brown currently is confined at the Southern New Mexico Correctional Facility in Las Cruces, New Mexico. On May 6, 1993, Brown was found guilty by a jury of various drug-related crimes. He was also adjudged to be a habitual offender with at least four prior felony convictions and was incarcerated for an actual term of 26 years. [Doc. 13, Ex. A.]

3.      As grounds for federal habeas review, Brown asserts a number of claims related to the accumulation or forfeiture of good time credits. More specifically, he set forth six claims: (1) whether NMSA § 33-2-34 violates Brown's right to earn 365 days of good-time credit within a one-year period by permitting only 30 days of good-credit each month (for a total possible annual credit of 360 days); (2) whether Brown possesses a liberty interest in earned and not yet earned good-time credits; (3) whether the New Mexico Corrections Department failed to award Brown certain good-time credits he already should have earned; (4) whether good-time credits were illegally withheld because of Brown's alleged misconduct on specific dates or whether good-time credits were withheld in violation of Brown's right to due process and certain procedural protections; (5) whether Brown was illegally found guilty of misconduct on or about September 25, 2001; and (6) whether the forfeiture of 90 days of good-time credit related to the alleged misconduct of September 25, 2001 violated Brown's procedural protections, including the right to a classification hearing. [Doc. 1, pp. 9-20.] Many of Brown's claims and allegations, as asserted in his 75-paragraph petition, are repetitive and overlapping.

4.      In its Answer, Respondent generally denies all material allegations that Brown's confinement is violative of any federal law. In addition, Respondent attempts to reduce or combine

the six claims into four claims and then argues that two of the four claims were not fully exhausted because they were not included in Brown's petition for writ of certiorari. Thus, Respondent asserts that Brown's petition is a mixed petition, containing both exhausted and unexhausted claims but requests that all claims be dismissed with prejudice because they lack merit and fail to assert any viable federal constitutional violation. [Doc. 13, ¶ 7.]

## Procedural History

5.      On September 14, 1994, the Judgment, Sentence and Commitment was entered in State v. Brown, CRCR 92-0760 (Second Judicial District Court, County of Bernalillo, State of New Mexico). [Doc. 13, Ex. A.]

6.      On March 28, 2005, Brown, acting *pro se*, filed a state petition for writ of habeas corpus in the First Judicial District Court (County of Santa Fe, State of New Mexico), No. D-0101-CV-2005-677. [Doc. 13, Ex. B.][3] In the state habeas petition, Brown set forth four issues, including the calculation of his basic sentence time and good-time credits, alleged unconstitutional deprivations of good-time credits, the disciplinary misconduct report issued on September 25, 2001, and the forfeiture of 90 days of alleged earned good-time credits. [Id.] Although Brown set out four issues in the state petition, his allegations are similar and overlapping with those asserted in the instant federal petition. In the state petition, for example, he argued he was entitled to 365 days of good-time credit each year, should have been given a classification hearing in terminating his eligibility to earn certain good-time credits, was denied due process and certain procedural safeguards when good-

---

[3]Brown filed an earlier application for writ of habeas corpus under § 2254 that was dismissed by this Court on October 1, 2003. No. CIV 03-1071 JP/KBM [Doc. 6.] He appealed that dismissal, and on June 8, 2004, the Tenth Circuit Court of Appeals dismissed the appeal, finding, in part, that Brown failed to show he had exhausted his state court remedies with respect to the claims concerning alleged entitlement to good-time credits. [June 8, 2004 Order.]

time credits were forfeited or not awarded, and should not have been or was not found guilty of misconduct on certain occasions.

   7.  On July 18, 2005, the State submitted a response to Brown's state habeas petition. The response first noted that Brown's counsel[4] would not be filing an amended petition on behalf of Brown. [Doc. 13, Ex. C.] The response argued that all claims should be dismissed on their merits.

   8.  On November 10 or 11, 2005, the state court held the first of several evidentiary hearings on Brown's state habeas petition. [Doc. 13, Ex. F.]

   9.  On December 20, 2005, Brown's counsel filed a Memorandum in support of the state habeas petition, arguing *inter alia* that Brown, an inmate in a New Mexico Supermax prison, was denied the right to earn good-time while participating in the "Supermax behavioral modification program", was not afforded process or meaningful review to challenge deprivations of good-time, was subjected to a longer period of detention due to the deprivation of good-time credits, and suffered "regressions" increasing his length of detention in a Supermax facility. Counsel further asserted that the length of Brown's underlying sentence was affected due to the deprivation of good-time credits. Counsel argued, in part, that Brown held an liberty interest in the accumulation of good-time credits or that his due process rights were violated by depriving Brown of his right to earn good-time credits without affording him any meaningful avenue of review. [Doc. 13, Ex. D.]

   10.  On February 3, 2006, the State of New Mexico filed a response to Brown's Memorandum. The State argued that Brown's position that the Due Process Clause and the New Mexico Earned Meritorious Deduction statute created a liberty interest in credit for good behavior was unsupported and erroneous.

---

[4]At some point, counsel was appointed for Brown in relation to his state habeas petition.

11.     On June 29, 2006, the State Court held a second evidentiary hearing on Brown's state habeas petition. On August 7, 2006, the State Court (Stephen Pfeffer, District Judge) issued a Final Order dismissing Brown's state habeas petition but remanding on one issue relating to a misconduct log incident (#S-01-09-14). [Doc. 13, Ex. F.]

12.     In its Final Order, the State Court found that as to Brown's challenge to multiple behavior log notations, the Corrections Department provided sufficient procedural due process protections. Brown appeared before the Unit Management Team, was advised of the reasons he did not receive meritorious deductions, had the ability to appeal and could have requested and reviewed his behavioral log record. [Doc. 13, Ex. F, p. 1.] The Court noted it did not decide the question of whether Brown possessed a liberty interest in good time credits not yet earned, but found that the private interest affected by the behavioral log notations was slight and the government's interest in running a correctional facility, without a major review procedure, was great. The State Court concluded that Brown did not meet his burden in proving the specific instances where he alleged a loss of good time credit. [Id., p. 1-2.] The Court further found that granting 30 days of good-time credits per month was mandated by statute and therefore, that Brown's claim of entitlement to earn 365 days a year was without merit. [Id., p. 2.] However, regarding Brown's position that he was not present for the classification committee meeting when the committee decided Brown forfeited 90 days of good-time due to a finding of guilt in behavioral log #S-01-09-14, the Court determined that the classification committee should re-convene, review the disciplinary hearing tape, Brown was to be present, and the committee was to decide whether to accept or reject the disciplinary officer's recommendation to forfeit 90 days of good-time credit. [Id.]

13.     Based on Respondent's Answer in this federal proceeding, the committee did reconvene and ultimately adopted the disciplinary officer's recommendation that Brown forfeit 90 days of good-time credit.

14.     On September 11, 2006, Brown, appearing *pro se*, filed a petition for writ of certiorari to the New Mexico Supreme Court. [Doc. 13, Ex. G.] In the petition, Brown states that hearings were held before the state court on November 10, 2005, May 15, 2006[5] and June 29, 2006. Evidence was heard, including arguments made in Brown's Memorandum. Brown asserted that the State Court Judge ordered Brown's attorney to file a brief by May 30, 2006, regarding his custody level but that no such brief was submitted. Brown further argued that he presented a settlement agreement in <u>Ayers v. Perry</u> (also attached to Brown's federal habeas petition), in which the Corrections Department purportedly agreed to make significant improvements in disciplinary procedures and other features of living conditions for inmates in Levels V and VI. Brown argued, in part, that inmates who lost good-time credit while in Levels V or VI, due to misconduct reports, were eligible for restoration of their good-time credit if they requested witnesses at their disciplinary hearings but the witnesses' evidence was not presented at the hearing.

15.     The specific questions Brown presented for review included whether he possessed a liberty interest in good-time credits earned and not yet earned and whether the trial court erred in deciding if Brown was afforded procedural due process in the termination of all un-awarded good-time credits and in good-time credits not yet earned. Brown argued that his good-time credits should not have been forfeited because the good-time recommendation was to be reviewed by the

---

[5] The Court's Final Order refers to only two hearings, one on November 10 or 11, 2005 and one on June 29, 2006.

Classification Committee. Brown also presented for review these questions: whether the trial court erred in deciding that Brown was afforded due process in the "Institutional Reclassification Committee authorization" to terminate his good-time credits; whether the trial court erred in not granting Brown's request to receive 365 days of good-time credits a year as opposed to 300 good-time credits per year; whether the New Mexico Good-Time Statute § 33-2-34 violates his right to earn 365 days of good-time per year; and whether the trial court erred in not granting Brown's request to dismiss the disciplinary conviction regarding a finding of guilt in behavioral log #S-01-09-14. [Id.]

16.     On October 20, 2006, Respondent filed opposition to Brown's petition for writ of certiorari. [Doc. 13, Ex. H.] Essentially, Respondent argued that all six grounds presented in Brown's petition for writ were without merit based on the state district court's two evidentiary hearings, its review of the issues and evidence, and the State Court's Final Order. Respondent noted that Brown was appointed counsel and was granted partial relief in the form of a new hearing before the Classification Committee. Respondent argued that the State Court already properly decided and resolved all of the questions before it, including the partial relief granted to Brown to appear before the Classification Committee concerning the one alleged occurrence of misconduct and related forfeiture of good-time credits.

17.     On October 27, 2006, the New Mexico Supreme Court denied Brown's petition for writ of certiorari.

18.     On November 13, 2006, Brown filed this habeas petition in federal court.

## Analysis

### Exhaustion of State Remedies

19.     As stated before, Brown's § 2254 habeas petition is construed as a § 2241 petition. The Tenth Circuit has held that a 28 U.S.C. § 2241 habeas petition is the appropriate means by which to seek the restoration of good time credits. Brown v. Smith, 828 F.2d 1493, 1495 (10th Cir. 1987). *See also* McIntosh v. United States Parole Com'n, 115 F.3d 809, 811 (10th Cir. 1997) (§ 2241 petitions are used to attack the execution of a sentence, including the deprivation of good-time credits and other prison disciplinary matters).

20.     Whether construed under § 2241 or § 2254, it makes little difference with respect to the issue of exhaustion or procedural default since those rules are applied in the same manner to both types of petitions. Montez, 208 F.3d at 866. *See also* Kokinda v. Saffle, 36 Fed. Appx. 939, 2002 WL 120541 at *1, n. 2. (10th Cir. Jan. 30, 2002) (Oklahoma procedural default rules apply equally to § 2241 or § 2254 petitions).

21.     A federal court may consider a petition for writ of habeas corpus only after the petitioner first presents his claims to a state court and exhausts his state remedies, unless "there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). The exhaustion requirement is satisfied if the federal issue was properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack. Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994). The Tenth Circuit also has held that a state prisoner does not fully exhaust state remedies without timely seeking certiorari review with the state supreme court.

8

Barnett v. LeMaster, 167 F.3d 1321, 1323 (10th Cir. 1999) (*citing* Dulin v. Cook, 957 F.2d 758, 759 (10th Cir. 1992)); Watson v. State of New Mexico, 45 F.3d 385, 387 (10th Cir. 1995).

22.     A state prisoner bringing a federal habeas petition bears the burden of showing he exhausted state remedies. Miranda v. Cooper, 967 F.2d 392, 398 (10th Cir.), *cert. denied*, 506, U.S. 924, 113 S.Ct. 347 (1992). Failure to exhaust state remedies may result in the dismissal of a habeas petition. Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198 (1982). Strict enforcement of the exhaustion requirement encourages habeas petitioners to exhaust all of their claims in state court and to present a single habeas petition to federal. Id. at 520.

23.     Contrary to Respondent's position, the Court determines that all of Brown's claims were fully exhausted and that there was no procedural default. Respondent argues that "claims 3 and 4", as Respondent re-numbered those claims, were not included in his petition for writ of certiorari. [Doc. 13, ¶¶ 3, 4, 6.] As best as the Court can determine from Respondent's characterization of the claims, Respondent contends the following claims were not exhausted: Brown's allegation that he was illegally convicted of a misconduct report issued on September 25, 2001, his allegation that the forfeiture of 90 days good-time credit related to that misconduct was improper, and his allegation that certain procedural protections were not provided relating to the misconduct and forfeiture.

24.     A careful reading of Brown's petition for writ of certiorari [Doc. 13, Ex. G.] includes arguments that Brown believed he was entitled to a Classification Committee hearing related to forfeiture of good-time credits. He also argued that the trial court erred in not granting his request to dismiss the disciplinary conviction regarding a finding of guilt in behavior log #S-01-09-14 and that 90 days of good-time credit related to that incident were improperly forfeited. [Id., pp. 6, 7, 10.] These appear to be the claims that Respondent argues were not included in the petition for writ of

9

certiorari. Thus, in providing a liberal construction of Brown's petition for writ of certiorari, the claims were fully exhausted.

25.   Respondent also argues that "claim 4", which Respondent characterizes as the state court's remand of the September 25, 2001 misconduct conviction to the Classification Hearing for reassessment, is unexhausted because Brown was required to "re-raise this claim in a second state habeas corpus petition" after the classification committee, upon remand, accepted the disciplinary officer's recommendation of forfeiture. The Court disagrees and concludes that Brown exhausted all of his state court remedies before filing the federal habeas petition.

26.   Even if there is some question as to exhaustion of certain claims raised by Brown, the Court finds that it may proceed to address and deny on the merits any unexhausted claims along with the exhausted claims. In <u>Montez</u>, 208 F.3d at 866, the Tenth Circuit noted the following:

> This Court recognizes that neither our case law nor the language of § 2241 settles whether a federal court may deny on the merits an unexhausted § 2241 petition as § 2254(b)(2) expressly permits. Nevertheless, because no credible federal constitutional claim is raised in Montez's petition, we conclude it is not inconsistent with § 2241 or our habeas corpus precedent to follow the policy of § 2254(b)(2) in this case.

Thus, the Court proceeds to review all claims presented in Brown's federal habeas petition.

### **Deference to State Court Adjudications**

27.   A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the proceeding resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an

unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d);[6]
Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833, 121 S.Ct. 88 (2000).

28.     Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "increase[d] the deference to be paid by the federal courts to the state court's factual findings and legal determinations." Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997). The Tenth Circuit Court of Appeals explained:

> Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case. 'Under § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable.' 'In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.' AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence.

Sallahdin v. Gibson, 275 F.3d 1211, 1221-22 (10th Cir. 2002) (*relying on* 28 U.S.C. § 2254(e)(1)).

29.     Before reaching Brown's habeas claims, the Court observes that the State Court's Final Order [Doc. 13, Ex. F] dismissing Brown's state habeas petition and remanding on one issue was a decision on the merits.

---

[6] In reviewing petitions brought under § 2241, the Court applies the standards set forth under 28 U.S.C. § 2254(d) to the pertinent state court decision. Aquiar v. Tafoya, 95 Fed. Appx. 931, 932-33 n. 2, 2004 WL 848417 (10th Cir. Apr. 21, 2004).

**Alleged right to earn 365 days per year under New Mexico Law**

30.     The State Court specifically addressed this claim and rejected it in its Final Order dismissing Brown's state habeas petition. The State Court found that the "granting of [30 days] good time credits per month is mandated by statute, specifically [NMSA] § 33-2-34, and Petitioner's claim [that he should receive 365 days per year instead of 360 days] is without merit." [Doc. 13, Ex. F, p. 2.] The Court expressly denied Brown's request to receive 365 days of good time credits per year. [Id.]

31.     New Mexico Statute § 33-2-34 provides that an inmate confined in a penitentiary or other institution in New Mexico "may be awarded a meritorious deduction of thirty days per month upon recommendation of the classification committee and approval of the warden . . . ." [7] NMSA § 33-2-34(A).

32.     The State Court's rejection of Brown's argument or its interpretation of the pertinent New Mexico Statute does not amount to a decision that was contrary to or involved an unreasonable application of clearly established federal law. Indeed, even if Brown could demonstrate the State Court misinterpreted New Mexico law, this would not be grounds for federal habeas relief. Rael v. Sullivan, 918 F.2d 874, 877 (10th Cir. 1990), *cert. denied*, 499 U.S. 928 (1991). A federal court will not "second guess a state court's application or interpretation of state law unless such application or interpretation violates federal law." Bowser v. Boggs, 20 F.3d 1060, 1065 (10th Cir.), *cert. denied*, 513 U.S. 926 (1994).

---

[7] The 2006 version of the same statutory provision states that a prisoner may earn meritorious deductions under certain circumstances not to exceed "thirty days per month of time served" for prisoners confined for committing a nonviolent offense. NMSA 33-2-34 (A)(2) (2006 Cum. Supp.).

33.     Brown's claim that he is improperly denied 365 days of good-time per year, even if true, does not violate federal law, nor has he demonstrated that the State Court's decision was contrary to or involved an unreasonable application of clearly established federal law. Thus, the Court recommends denial and dismissal of claim 1.

**Alleged Liberty Interest in Earned and Unearned Good-Time Credit and Related Claims**

34.     The Tenth Circuit has held that an inmate has a liberty interest in earned good time credits and that they cannot be forfeited or denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment. Taylor v. Wallace, 931 F.2d 698, 700 (10th Cir. 1991) (internal quotation omitted).

> However, because prison disciplinary proceedings are not part of a criminal prosecution, "the full panoply of rights due a defendant in such proceedings does not apply." . . . Rather, the inmate's right to due process in a disciplinary proceeding requires only that he receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Additionally, the factfinder's conclusions must be supported by "some evidence in the record."

Thus, while there is a liberty interest in <u>earned</u> good time credits, there is no authority for finding that an inmate has a liberty interest in unearned good time credits. Stated differently, there is no legal basis establishing a liberty interest in future good-time credits when those credits depend on various criteria, including program participation, good behavior, the prison facility's discretion, etc.

35.     In Owens-El v. Wiley, 183 Fed. Appx. 775, 2006 WL 1585735 (10th Cir. June 9, 2006), a federal prisoner argued he had a liberty interest in receiving good-time credit as a special

award for performing a meritorious act. The Tenth Circuit reasoned that the inmate had no liberty interest in such an award since the granting of the special award was discretionary. Id. at 778.

> Although it is true that good-time credits *already earned* may not be revoked "without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment," . . . there is no liberty interest in receiving good-time credits when discretion to grant them has been vested in prison officials. *See* Fogle v. Pierson, 435 F.3d 1252, 1262 (10th Cir. 2006) (no liberty interest in potentially receiving good-time credits when underlying Colorado statute provided such credits were awarded solely at the discretion of prison officials).

Id. (some internal citation omitted) (emphasis in original).

36. In its decision, the State Court did not directly decide the question of whether Brown had a liberty interest in earning potential good-time credits. In reference to the liberty interest claim, the State Court noted that in applying the balancing test announced in Wilkinson v. Austin, 545 U.S. 209 (2005), the private interest affected by the behavioral log notations was slight and the government's interest in running a correctional facility without a major review procedure was great. [Doc. 13, Ex. F, pp. 1-2.] Thus, it appears that the State Court, after consideration of all the pleadings and evidence presented at hearings, rejected any claim that Brown had a liberty interest in unearned good-time credits that was violated.

37. Moreover, it is clear that Brown cannot prove a claim that any unearned, potential good-time credits are mandatory and that, therefore, he was denied those credits without appropriate procedural protections. In other words, the law does not confer future meritorious deductions based merely on Brown's status as an incarcerated prisoner.

38. This is also true because the pertinent statutes and correctional facility regulations provide the facility or warden with discretion to award meritorious deductions. For example, NMSA

§ 33-2-34 states that an inmate "may be awarded" a meritorious deduction of 30 days per month "provided that" the inmate does not disobey certain orders, is not placed in disciplinary segregation, and/or participates in certain recommended and approved programs. The correctional facility regulations, attached as an exhibit to Brown's petition, provide the facility with similar discretion. For example, they state, in part, that meritorious deductions will not be made for inmates who disobey certain orders, who are in disciplinary segregation, or who are not engaged in recommended and approved programs. [Doc. 1, attachments.] An eligible inmate may receive up to 30 days meritorious deductions per month "upon recommendation of the Classification Committee and approval of the Warden or contract monitor." [Id.] As stated *supra,* the Tenth Circuit rejected a similar argument finding no liberty interest existed in receiving potential good-time credits because those meritorious deductions were awarded solely at the discretion of prison officials. Owens-El, 183 Fed. Appx. at 778.

39.     For the above-stated reasons, the Court concludes that the State Court's rulings on Brown's liberty interest claim did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or that was based on an unreasonable determination of the facts in light of the evidence presented.

40.     In addition to the liberty interest claim, Brown alleges, throughout his petition, that good-time credits were improperly withheld or forfeited, including credits concerning behavior log notations on July 21, 2001, August 29, 2001, September 20, 25, 26 and 27, 2001 and January 22, 2002. [Doc. 1, *see* Claims 3 and 4.] Brown further contends that some of the good-time credits were forfeited without the required procedural protections or that the findings of misconduct were not supported by "some evidence." He generally challenges the calculation of his basic sentence credits

15

and asserts that, as calculated now, he will be illegally detained beyond the time he should be incarcerated. [*See, e.g.,* Doc. 1, ¶¶ 10-15, 25-29, Claims 2, 3 and 4.]

41. The State Court rejected Brown's arguments regarding the specific instances of misconduct and related withheld or forfeited good-time credits, along with his allegation that he was not afforded appropriate due process protections. In its Final Order, the State Court ruled as follows:

> As to Petitioner's challenge to the behavioral log notations, the New Mexico Corrections Department provided sufficient procedural due process protections to Petitioner. The Petitioner appeared before the Unit Management Team; he was advised of the reasons why he did not receive meritorious deductions; he had the ability to appeal the Unit Management Team's decision; and he could have requested and reviewed his behavior log record.

[Doc. 13, Ex. F., p. 1.] Additionally, the State Court found that Brown did not meet his burden in proving the specific instances where he alleged a loss of good-time credit, and that the Respondent was not provided with sufficient notice or information as to which instances were being challenged by Brown. [Id., p. 2.]

42. As stated previously, AEDPA increased the deference owed by the federal Court to a State Court's findings. In accordance with AEDPA, federal courts should presume state court factual findings are correct. The burden is on the petitioner to rebut that presumption by clear and convincing evidence. Here, the State Court held at least two evidentiary hearings on Brown's claims concerning good-time credits. According to Brown, three hearings were held. Moreover, Brown was represented by counsel at some or all of these hearings, and counsel submitted pleadings to the State Court on Brown's behalf. Brown has failed to rebut the presumption that the State Court's factual findings are correct. This is confirmed when examining Brown's petition and the attachments which do not show clearly when, if ever, Brown was denied certain procedural protections with

respect to specific behavior log reports.  Nor does Brown show with clear and convincing evidence which findings by the Corrections Department were not supported by "some evidence."  Indeed, some of the attachments to Brown's petition show that he was afforded the opportunity to attend committee sessions concerning the forfeiture of good-time credits but that he refused, that he refused to sign a notice of a re-scheduled hearing, and that he did not follow proper procedures in grieving the forfeiture of good-time credits.  Another attachment demonstrates that the correctional facility's procedures were followed in denying Brown good-time credits for the months of October and November 2001 because Brown was in disciplinary segregation.  Multiple attachments show that Brown was written up for "interference w/court; disobeying a lawful order; failure to follow published rules & regulations," "refusal to come out of strip cage; became argumentative," "verbally abusive; threatened C.O.; did not stand up for 9:00 p.m. count; did not stand for 5:30 a.m. count," "inmate was directed several times not to do laundry in shower, he washed a pair of boxers in shower," and "Inmate Brown became very argumentative and aggressive and started calling [the corrections' employee] a 'fucken punk' . . . ."  [Doc. 1, attachments.]

   43. Again, the Court finds that the State Court's rulings on these good-time credit claims did not result in a decision that was contrary to or involved an unreasonable application of clearly established law, or that was based on an unreasonable determination of the facts in light of the evidence presented.  Thus, the Court recommends denying and dismissing Brown's liberty interest claim (claim 2) and the related claims discussed above (claims 3 and 4).

### **Alleged Misconduct on September 25, 2001 and Related Forfeiture of 90 Good-Time Credits**

44.     Brown alleges that the disciplinary misconduct report issued on September 25, 2001 was improper or illegal, and also that the forfeiture of 90 days "earned" good-time credits was improper. [Doc. 1, § 3.] He further contends he was illegally convicted of the misconduct related to this incident and argues that he did not "threaten" the officer in any way. Brown claims that there is "nothing in the officer's report that stated [Brown] was threatening." Brown asserts in his federal habeas petition that he was not given a Classification Hearing with respect to the termination of good-time credits regarding this misconduct report. [Doc. 1, § 61-65, 66-69, Claims 5 and 6.]

45.     In Brown's state habeas petition, he also argued that there was insufficient evidence to show that he threatened a corrections officer and that he was denied due process when he did not receive good-time credits for September, October and November 2001. The pertinent misconduct report (#S-01-09-14) expressly charges Brown with "threats" and "verbal abuse or gestures." The reporting officer stated that Brown "became very argumentative and aggressive [on 9/25/01] and started calling me a 'fucken punk' and [stated] that 'I was luck as hell because he was locked up. He also stated that I didn't realize how easy it is to get my phone # and address 'on the outside.' During entering and exiting pod-C Brown would call me a 'yotto' several times." [Doc. 13, Ex. 6 to Ex. C.]

46.     The State Court had all of this evidence before it when it held at least two evidentiary hearings. In its Final Order rejecting Brown's claims, the State Court did not specifically comment on whether it found sufficient evidence to support the misconduct report of 9/25/01. However, the lower court generally rejected Brown's challenges to multiple behavioral log notations and concluded Brown had not met his burden in proving specific instances "where he alleges a lost [sic] of good time

credit. . . ." The Court remanded solely to ensure Brown was present and given appropriate procedural protections with respect to a recommendation that 90 days of good-time credits be forfeited. This was done. According to Respondent, the committee reconvened and again adopted the disciplinary officer's recommendation of the 90-day forfeiture.

47. Brown did not present any evidence that he appealed the findings or result of the committee's meeting after remand or that there were any deficiencies with the process provided him on remand. In his federal habeas petition, he simply re-argues the same positions he raised in his state habeas decision. He also asserts that the classification committee could not forfeit the 90 days of good-time credit after the committee failed to provide him with a hearing. [Doc. 1, ¶¶ 67-68.]

48. The State Court ensured that Brown was given a Classification Hearing at which he was present. The State Court also concluded that, perhaps with the exception of the Classification Hearing, Brown was provided sufficient procedural due process. Moreover, in the state habeas court proceedings, Respondent established that Brown was in disciplinary segregation from October 5, 2001 to November 3, 2001, which made him ineligible by statute to earn good-time credits during those months. NMSA 1978 § 33-2-34(A)(2), Ex. C, p. 7, Ex. 7 to Ex. C.

49. The Court concludes that Brown has not presented "clear and convincing evidence" sufficient to rebut the presumption that the State Court's findings were correct as to the behavioral misconduct of 9/25/01. Moreover, the State Court ensured that Brown was given all of the process due, and Brown failed to come forward to show that the committee meeting, on remand, was deficient in anyway.

50. For all of these reasons, the Court concludes that the State Court's rulings on Brown's claims related to the 9/25/01 misconduct report and forfeiture of 90 days of good-time credit,

including its remand of the 9/25/01 misconduct report, did not result in a decision that was contrary to or involved an unreasonable application of clearly established law, or that was based on an unreasonable determination of the facts in light of the evidence presented. Thus, the Court recommends denying and dismissing Brown's claims 5 and 6.

### **Recommended Disposition**

That Brown's § 2241 petition [Doc. 1] be denied, and that all of his claims be dismissed, with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge